567 S.E.2d 482

Joseph WILSON, Respondent,

v.

Charles RIVERS, Appellant.

No. 3504.

Court of Appeals of South Carolina.

Heard March 5, 2002.

Decided May 28, 2002.

Rehearing Denied Aug. 23, 2002.

John L. McDonald, Jr., of Clawson & Staubes, of Charleston, for appellant.

Francis X. McCann, of Charleston, for respondent.

HEARN, Chief Judge:

Joseph Wilson brought this action against Charles Rivers for injuries he allegedly sustained in a car accident. The jury returned a verdict for Wilson. Rivers appeals, arguing the trial judge erred in refusing to admit the deposition of his expert witness in biomechanics. We affirm.

## FACTS

Wilson was a passenger in a vehicle driven by a co-worker, Deborah Ryan, which was stopped at a red light when Rivers' car struck them from behind. At the time of the impact, Wilson was wearing a seatbelt and was leaning forward to retrieve his keys from the car's floorboard.

Wilson brought this personal injury action. In his amended answer, Rivers admitted simple negligence "in allowing the front of his vehicle to bump the rear of the vehicle in which [Wilson] was a passenger" but asserted Wilson's claims of

back pain and surgery were unrelated to the low-speed collision.

At trial, Wilson testified he did not call EMS or go to the hospital immediately following the accident. The next Monday, he went to a doctor, had x-rays made, and was diagnosed with "some soft-tissue damage." When Wilson failed to improve after several months, he was given an MRI and referred to an orthopedist who diagnosed him with a ruptured disk. The orthopedist recommended surgery after an epidural failed to provide Wilson relief. Wilson underwent a spinal fusion in December 1997. At the time of trial, Wilson's medical bills totaled $54,324.88, and he claimed lost wages of $8,872.47.

Wilson introduced the depositions of two of his treating physicians. The first testified that Wilson had a disk rupture with an annular tear and a herniated disk at L4–5 and "to a reasonable degree of medical certainty that the accident most probably did cause the injury that subsequently led to [Wilson's] necessity for surgery." However, he did note that Wilson had degenerative arthritis in his lower back that probably predated the accident. Wilson's orthopedic surgeon testified to the same injuries and stated they were consistent with being in a bent over position during an impact. Wilson testified he had no back pain prior to the accident.

In support of his contention that the accident did not cause Wilson's injuries, Rivers sought to introduce the depositions of a radiologist and Dr. Richard Harding, a purported expert in the field of biomechanics. The radiologist's testimony was admitted, and he testified that it is unusual for trauma of an acute nature to involve just one disk if there has been no fracture. He believed this accident did not cause or aggravate Wilson's injuries. The thrust of Dr. Harding's testimony was that Wilson's injuries were not likely caused by the accident in question. After reading the deposition and conducting a lengthy colloquy on the matter, the trial judge refused to admit the deposition because he was concerned it would confuse the jury.[1]

---

1. In excluding the deposition, the trial judge said, "I don't think I don't believe it will assist this Jury to understand the evidence in this case. I believe it would be more confusing than anything else and I would exclude it on that basis."

The jury returned a verdict for Wilson for $103,500. The trial judge granted Rivers a setoff for the amount previously tendered to Wilson by the primary insurance carrier but denied his post-trial motions for a new trial absolute or new trial *nisi remittitur.* Rivers appeals.

## DISCUSSION

On appeal, Rivers contends the trial judge abused his discretion in excluding Dr. Harding's videotaped deposition regarding the injuries reportedly sustained by Wilson. We disagree.

Rivers' argument focuses on Dr. Harding's qualification as an expert in the field of biomechanics. However, based on our review of the record, the trial judge did not specifically refuse to qualify Dr. Harding as an expert, but instead excluded the deposition under Rule 403, SCRE. Although he expressed concerns about Dr. Harding's qualifications, he ultimately found that the deposition was more prejudicial than probative and that the testimony would be confusing to the jury.

In evaluating proposed expert testimony, trial judges consider Rules 702 and 403, SCRE. *See State v. Council,* 335 S.C. 1, 20, 515 S.E.2d 508, 518 (1999). Rule 403 provides for the exclusion of otherwise relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury...." This analysis is subject to an abuse of discretion standard. *State v. Hamilton,* 344 S.C. 344, 358, 543 S.E.2d 586, 593 (Ct.App.2001). An abuse of discretion occurs when a trial court's decision is unsupported by the evidence or controlled by an error of law. *Ledford v. Pennsylvania Life Ins. Co.,* 267 S.C. 671, 675, 230 S.E.2d 900, 902 (1976). Moreover, "[a] trial judge's decision regarding the comparative probative value and prejudicial effect of evidence should be reversed only in 'exceptional circumstances.'" *Hamilton,* 344 S.C. at 357–58, 543 S.E.2d at 593 (Ct.App.2001).

The trial judge found Harding seemed confused about the subject of his testimony and gave contradictory answers about the basis of his opinion. Based on our review of the deposition, we find there is evidence supporting the trial

judge's decision to exclude Dr. Harding's deposition. For example, Harding testified that he made his determination about Wilson's injuries caused by the accident based on his determination of the change in velocity at impact which he reached by looking at the damage to the vehicles, but he then testified that the amount of property damage does not determine the extent of injury. Harding also testified that he did not know either the speed of Rivers' vehicle or Wilson's precise position at impact. From this evidence, we find the trial judge properly concluded that the jury would be unduly confused by the testimony. Although this is a close case, it is not an exceptional circumstance warranting reversal. Because we do not believe the trial judge exceeded his discretion in excluding the evidence under Rule 403, SCRE, we affirm his decision.

**AFFIRMED.**

CONNOR, J., concurs.

SHULER, J., dissents in a separate opinion.

SHULER, Judge, dissenting:

Because I believe there is no evidence in the record to support the trial court's finding that Harding's proposed testimony would be confusing to the jury and therefore more prejudicial than probative, I respectfully dissent.

Rule 403, SCRE provides that evidence, even if relevant, "may be excluded if its probative value is *substantially* outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." (emphasis added). Although the trial court's decision on the admission of an expert's testimony is largely discretionary, "the exercise of this discretion will be reversed where an abuse of discretion has occurred." *Payton v. Kearse*, 329 S.C. 51, 61, 495 S.E.2d 205, 211 (1998).

The trial court's only reasons for deciding Harding's testimony would confuse the jury were that Harding "doesn't understand [biomechanics] himself" and that he "contradict [sic] himself on numerous cases [sic] as for the basis for his opinion." To the contrary, in my view Harding's proffered testimony clearly demonstrates his understanding of physics

as it applies to the human body, and furthermore that his alleged contradictions are not contradictory at all.

Harding's deposition testimony was based on his expertise in medicine and biomechanics, "a branch of physics that deals with the understanding of what happens when people ... are exposed to forces." In reaching his conclusions, he considered Wilson's medical records, the depositions of Wilson's treating physicians, the accident report, and photographs of and repair cost estimates for both vehicles, along with his knowledge of impact tests by Consumer Reports and the Insurance Institute for Highway Safety on the Mazda 626, the type of car in which Wilson was riding. As a result, Harding opined that, to a reasonable degree of medical certainty, the forces involved in the accident were not of a sufficient magnitude or direction to cause the disk herniating suffered by Wilson.

Harding further testified his conclusion was based on a measured calculation called the impact-related change in velocity, or "delta V," which he explained "represents the difference between the velocity of [Wilson's vehicle] before the accident to the velocity of [his] vehicle as a consequence of the accident." He stated that "the higher the delta V, the more likely it is to cause injury, because the change in velocity occurs over a very short period of time and, as such, imposes accelerations and therefore force on the individuals in the vehicle." Based on his review of the documentary evidence, Harding concluded the delta V on the Mazda "was no greater than five miles an hour."

The majority proposes to affirm the trial court based on allegedly contradictory answers by Harding. As to the issue of the property damage, Harding testified that *one* factor he reviewed in evaluating the case was the damage to both vehicles; on cross-examination, he freely admitted he would not testify "that the amount of property damage to a car ... determines the extent of injury [to] an occupant." Regarding the speed of Rivers' vehicle, Harding specifically stated it was not a relevant consideration in his analysis because the delta V is the *change* in speed of *Wilson's* vehicle. Finally, Harding's testimony evidenced an understanding of Wilson's position when the accident occurred. As Harding reviewed an illustration drawn by one of his medical artists showing an individual

bent over by "about 45 degrees," the following exchange occurred:

Q. [A 45 degree angle] wouldn't be a realistic example in this case because Mr. Wilson had his chest on his knees and his hands in the floorboard at the time of the wreck. Are you aware of that?

A. Well, I know that's what he said on occasions. He's also just said he was leaning forward and couldn't recall precisely how he was postured at the time of the impact. But that he was leaning forward.

Q. So you don't know what his position was at the time of impact yourself?

A. Not precisely. That is correct.

In my opinion, there is nothing contradictory or remotely confusing about this testimony. In a recent case on similar facts, the Louisiana Court of Appeal held a trial judge improperly excluded testimony from a biomechanics expert. *See Fussell v. Roadrunner Towing & Recovery*, 765 So.2d 373 (La.Ct.App.2000). There, as here, the expert was asked to determine whether a low-speed collision could have caused the plaintiff's herniated disk based on a review of vehicle photographs, repair estimates, driver statements, and the plaintiff's medical records. *Id.* at 377. The court stated that "[a]ny alleged failure to visit the scene or supply specific facts in the analysis or conclusion provides a basis for attack [on] cross-examination." *Id.* More specifically, the court found the expert's references to "force vector and injury mechanisms at various speeds" supported his proffered opinion and would not prejudice or confuse the fact finder. *Id.; see also Berkeley Elec. Co-op, Inc. v. S.C. Pub. Serv. Common*, 304 S.C. 15, 20, 402 S.E.2d 674, 677 (1991) ("Where the expert's testimony is based upon facts sufficient to form the basis for an opinion, the trier of fact determines its probative value.").

Moreover, I would find the exclusion of Harding's testimony prejudiced Rivers, who offered it to support his defense that the low-speed, low-impact accident could not have caused Wilson's back injury, the major issue in dispute at trial. As noted by the *Fussell* court, the relative importance of such expert testimony increases in low-speed collisions which involve serious injuries:

As the force of impact in a collision lowers, and the seriousness of the injury rises, expert testimony becomes more relevant. An expert's commentary on speed, rate of acceleration, force of impact, and the correlation to injuries suffered as exemplified in reliable published studies would become an integral part of the defense or plaintiff's case. A plaintiff or defendant cannot be deprived of their right to offer a reasonable presentation of issues. . . .

*Id.* at 376.

For the foregoing reasons, I would hold the trial court abused its discretion in excluding Harding's testimony, and would therefore reverse and remand for a new trial. *See Means v. Gates,* 348 S.C. 161, 171, 558 S.E.2d 921, 926 (Ct.App.2001) (finding the exclusion of expert testimony "not harmless error as there was no equivalent testimony presented").